UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TANYA R.,

                Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**DECISION AND ORDER**

1:24-CV-00375 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Tanya R. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("Act"), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g). (*See id.*). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 12; Dkt. 18), and Plaintiff's reply (Dkt. 19).

For the reasons discussed below, the Commissioner's motion for judgment on the pleadings (Dkt. 18) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 12) is denied.

## BACKGROUND

On August 23, 2021, Plaintiff filed a protective application for SSI.  (*See* Dkt. 6 at 235-44).[1]  In her application, Plaintiff alleged that she was disabled because of anxiety, depression, Barrett's esophagus, and degenerative disc disease, with a disability onset date of November 5, 2019.  (*See id.*).  The Social Security Administration ("SSA") initially denied Plaintiff's application, as well as upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*See id.* at 131-55).  Following a telephonic hearing on June 29, 2023, ALJ Stephen Cordovani issued an unfavorable decision on July 31, 2023.  (*See id.* at 18-37).  Plaintiff requested Appeals Council review, which was denied on February 26, 2024, making the ALJ's decision the final determination of the Commissioner.  (*See id.* at 5-10).  Plaintiff then filed this action on April 23, 2024. (Dkt. 1).

## LEGAL STANDARDS

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation modified).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by "substantial evidence."  *See* 42 U.S.C. § 405(g). "'Substantial evidence' is 'more than a mere scintilla.  It means such relevant evidence as

---

[1]    Page numbers in docket citations refer to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

a reasonable mind might accept as adequate to support a conclusion.'" *Talavera*, 697 F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (citation modified).  However, "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citation modified).

## II.    <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. § 416.920(a); *see Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  *Id.*  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id.* § 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  *Id.*  But if the claimant does have at least one severe impairment, the ALJ continues to step three.  *Id.*

At step three, the ALJ examines whether a claimant's severe impairment meets or medically equals the criteria of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *Id.* § 416.920(d).  If the severe impairment meets or medically equals the criteria of a listed impairment and has lasted, or is expected to last, for a

continuous period of at least 12 months, then the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "'A regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. 20 C.F.R. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* But if he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant, in light of his or her age, education, and work experience, "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (citation modified); *see* 20 C.F.R. § 416.960(c).

## **DISCUSSION**

## I.    **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a). (*See* Dkt. 6 at 21-33). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since applying for SSI on August 23, 2021. (*Id.* at 23).

At step two, the ALJ found that Plaintiff's obesity, cervical spine impairments, lumbar spine impairments, and chronic obstructive pulmonary disease ("COPD") were severe. (*Id.* at 23-26). He also found that Plaintiff's gastroesophageal reflux disease, hypertension, hyperlipidemia, Barrett's esophagus, left knee impairment, irritable bowel syndrome, migraines, major depressive disorder, and anxiety disorder were not severe. (*See id.*). Further, the ALJ considered the impact of Plaintiff's major depressive disorder and anxiety disorder on her mental work-related functioning and found that she was: (1) mildly impaired in understanding, remembering, or applying information; (2) mildly impaired in interacting with others; (3) mildly impaired in concentrating, persisting, or maintaining pace; and (4) mildly impaired in adapting or managing herself. (*See id.* at 24-25).

At step three, the ALJ found that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*See id.* at 26). More specifically, the ALJ determined that Plaintiff's severe impairments did not meet or medically equal Listings 1.15, 1.16, or 3.02. (*See id.*). Then, before proceeding to step four, the ALJ concluded that Plaintiff had the RFC to perform "light work" as defined in 20 C.F.R. § 416.967(b), except that she could:

> Frequent[ly] [climb] ramps and stairs [and] frequent[ly] balance as that term is defined in the Selected Characteristics of Occupations ("SCO"); frequent[ly] stoop [to one] knee; occasional[ly] crouch [or] crawl; [never] climb ladders[,] ropes[,] [or] scaffolds; [never be exposed to] extreme heat, cold, wetness[,] or humidity; [never be exposed to] loud noise [or] vibration[s]; [never experience] concentrated exposure to fumes, odors, dusts, gases, [areas of] poor ventilation, and other respiratory irritants; [and never] work around hazards

> such as unprotected heights or dangerous moving mechanical
> parts.

(*See id.* at 26-27 (citation modified)).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 32). But at step five, the ALJ found that Plaintiff, given her age, education, work experience, and RFC, could perform substantial gainful activity as a marker, router, or photocopy machine operator. (*See id.* at 32-33). Accordingly, the ALJ determined that Plaintiff was not disabled as defined by the Act. (*Id.* at 33).

## II.    <u>The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error</u>

Plaintiff asks the Court to reverse or, alternatively, to remand this matter to the Commissioner, generally arguing that the ALJ erred by: (1) failing to properly evaluate the medical opinions; (2) assessing Plaintiff's mental impairments; and (3) failing to support the RFC determination with substantial evidence. (*See* Dkt. 12-1 at 11-30). The Court has considered these arguments and, for the reasons discussed below, finds them to be without merit.

### A.    **Evaluation of Medical Opinion Evidence**

For claims filed on or after March 27, 2017, such as Plaintiff's, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Further, "when a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative findings from that medical source together

using the factors listed in paragraphs (c)(1) through (c)(5) of this section. *Id.* § 416.920c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *See id.* § 416.920c(c).

The ALJ must articulate his or her consideration of the medical opinion evidence, including how persuasive he or she finds the medical opinions in the case record. *See id.* § 416.920c(b). More specifically, the ALJ must explain how he or she considered the "supportability" and "consistency" factors and may—but is not required to—explain how he or she considered the remaining factors. *See id.* § 416.920c(b)(2). With respect to "supportability," the regulations provide that "the more relevant the objective medical evidence and supporting presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(1) (citation modified). And with respect to "consistency," the regulations provide that "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

Here, the ALJ considered the opinions of consultative examiner Adam Brownfeld, Ph.D., state agency reviewing psychiatric consultant P. Roy-Petrick, Ph.D., state agency reviewing psychiatric consultant M. D'Ortona, Psy.D., consultative examiner Raquel Benchoam-Ravid, M.D., state agency reviewing medical consultant A. Vinluan, M.D., state agency reviewing medical consultant J. Lawrence, M.D., former treating provider John Hoffman, M.D., and treating provider Roxanne Conway, Nurse Practitioner. (*See* Dkt. 6 at 30-31). As discussed herein, the ALJ articulated how he considered the supportability and consistency factors in evaluating the opinions from these sources. (*See id.*). And despite Plaintiff's suggestion to the contrary, the ALJ did not need to individually compare each medical opinion with one another in order to satisfy his obligations. *See, e.g.*, *Linda A. v. Comm'r of Soc. Sec.*, No. 6:24-CV-6258 (JLS), 2025 WL 3482747, at *4 (W.D.N.Y. Dec. 4, 2025) ("But an ALJ is not required to compare individual medical opinions with each other; instead, an ALJ needs only to address the consistency of an opinion with the remainder of the record.").

For example, Dr. Hoffman opined on December 18, 2013, that Plaintiff was very limited in standing, lifting, and carrying, and moderately limited in walking, sitting, pushing, pulling, bending, and using stairs or other climbing. (*See* Dkt. 6 at 342-43). The ALJ explained that Dr. Hoffman's opinion "[was] stale relative to the period under consideration, as it was rendered [in December 2013] some eight (8) years prior to the application date and further was rendered contemporaneous[ly] with an initiating injury." (Dkt. 6 at 30). These were appropriate reasons not to fully credit the opinion. *See, e.g.*, *Lakeisha P. v. Comm'r of Soc. Sec.,* No. 1:24-CV-00306 (JGW), 2025 WL 3506959, at

*10 (W.D.N.Y. Dec. 8, 2025) ("To be sure, 'medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding.'" (quoting *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016))); *Patricia L. v. Saul*, No. 20-CV-6173L, 2021 WL 1845914, at *2 n.1 (W.D.N.Y. Apr. 21, 2021) ("The ALJ's decision not to give controlling weight Dr. Gibbs' opinions was not improper, given that his opinions were rendered at the time of plaintiff's ankle injury and surgery, and were not particularly probative of her RFC before the injury, or after she had recovered from surgery.").  The ALJ ultimately concluded that Dr. Hoffman's opinion was "not persuasive relative to any assessment of [the] current level of [Plaintiff's] functional limitation."  (*Id.* at 32). Although the ALJ did not use the words "supportability" and "consistency," it is clear that the ALJ considered those factors in evaluating Dr. Hoffman's opinion.  *See, e.g.*, *Angela H.-M. v. Comm'r of Soc. Sec.*, 631 F. Supp. 3d 1, 10 (W.D.N.Y. 2022) ("Although the ALJ did not specifically use the words 'supportability' and 'consistency' in discussing Dr. Bing's opinion, it is clear from the record that the ALJ found his opinion to be inconsistent and not supported by other evidence in the record, including the historical record and records from Plaintiff's treating sources.").

Likewise, contrary to Plaintiff's arguments, the ALJ properly addressed the opinions of Dr. Brownfeld, Dr. Roy-Petrick, and Dr. D'Ortona.  Dr. Brownfeld opined that Plaintiff was not impaired in her ability to: (1) understand, remember, or apply simple and complex directions; (2) use reason and judgment to make work-related decisions; (3) interact adequately with supervisors,  co-workers, and the public; (4) sustain concentration

and perform a task at a consistent pace; (5) sustain an ordinary routine and regular attendance at work; (6) maintain personal hygiene and appropriate attire; and (7) be aware of normal hazards and take appropriate precautions, which the ALJ found persuasive. (*See* Dkt. 6 at 31, 593). Dr. Brownfeld concluded that Plaintiff's psychiatric problems were not significant enough to interfere with her functioning on a daily basis. (*See id.* at 594). The ALJ found this conclusion to be "consistent with [state agency psychologists] Dr. Roy-Petrick and Dr. D'Ortona" and "supported by the benign clinical findings from Dr. Brownfeld himself, with wholly normal findings on mental status examination, as well as overall benign mental status examination findings with treating providers in the record." (*Id.* at 31). To the extent Dr. Brownfeld also opined that Plaintiff was moderately impaired in her ability to regulate emotions, control her behavior, and maintain her well-being (*see id.* at 593-94), the ALJ found that portion of the opinion unpersuasive on the grounds that it was unsupported by Dr. Brownfeld's own examination findings, inconsistent with Plaintiff's reported activities of daily living, inconsistent with a large body of Plaintiff's treatment records indicating benign mental status examinations, and inconsistent with the opinions of Dr. Roy-Petrick and Dr. D'Ortona (*see id.* at 31). Both Dr. Roy-Petrick and Dr. D'Ortona similarly opined that Plaintiff was mildly impaired in the four areas of mental work-related functioning. (*See id.* at 82-83, 102-03). The ALJ found those opinions persuasive, explaining that "these opinions are consistent with each other, consistent with ultimate conclusion of Dr. Brownfeld above and further supported by Dr. Brownfeld's normal examination findings as well as to the treatment record." (*See id.* at 31 (citation modified)). Thus, contrary to Plaintiff's contentions, the ALJ addressed the opinions'

consistency with each other as well as their supportability by the record as a whole and relied on proper grounds for discounting the portion of Dr. Brownfeld's opinion containing a moderate limitation. *See, e.g.*, *Daniel F. v. Comm'r of Soc. Sec.*, No. 1:22-CV-00292 EAW, 2023 WL 6304722, at *7 (W.D.N.Y. Sept. 28, 2023) ("The ALJ's comparing of those activities of daily living to restrictions set forth in medical opinions was appropriate." (citing *Rusin v. Berryhill*, 726 F. App'x 837, 840-41 (2d Cir. 2018))).

Plaintiff also contends that the ALJ's conclusion that the opinions of Dr. Benchoam-Ravid and NP Conway were unpersuasive was flawed. (*See* Dkt. 12-1 at 22-30). The Court disagrees. Dr. Benchoam-Ravid opined that Plaintiff "should avoid being in unprotected heights and operating machinery or motor vehicles because of headaches." (*See* Dkt. 6 at 601). She further opined that Plaintiff was markedly impaired in her ability to walk, stand, sit, climb stairs, lift, carry, push, and pull heavy weights for a prolonged period of time, as well as in her ability to stoop and squat. (*See id.*). NP Conway opined that Plaintiff: (1) was incapable of even "low stress" jobs; (2) could not walk a single city block without needing rest or experiencing severe pain; (3) could sit for only 10 minutes at one time; (4) could only stand for 15 minutes at one time; (4) could sit for less than 2 hours total during an 8-hour workday; (5) could stand or walk for less than 2 hours total during an 8-hour workday; (6) would need to shift positions at will; (7) would need to take unscheduled breaks every 5 to 10 minutes; (8) would need to keep her legs elevated at a waist-high level every 30 minutes; (9) could never lift and carry items less than 10 pounds; (10) could never hold her head in a static position; (11) could never twist, stoop, crouch, squat, or climb ladders; (12) would be absent more from work more than 4 days per month;

and (13) would experience constant interference with attention and concentration in simple work-related tasks.  (*See id.* at 1256-58).

The ALJ found Dr. Benchoam-Ravid's opinion unpersuasive for four reasons.  (*See id.* at 30).  First, the opinion was "stated in unclear, vague terms rather than functional terms as required, including . . . opining as to a 'marked limitation for prolonged' exertional[s] and/or posturals."  (*Id.*).  This was an appropriate consideration.  *See Valdes-Ocasio v. Kijakazi*, No. 21-3152, 2023 WL 3573761, at \*2 (2d Cir. May 22, 2023) (finding that the ALJ properly afforded less weight to the opinion of an examining expert whose opinion was vague as to the plaintiff's specific limitations).  Second, the opinion was inconsistent with other pieces of objective medical evidence in the record, "including multiple reports from [Plaintiff's] own providers that she was ambulatory with a normal gait."  (*See* Dkt. 6 at 30).  Third, the opinion was inconsistent with the opinions of Dr. Vinluan and Dr. Lawrence, both of whom "had the benefit of reviewing the balance of the medical evidence of record" and concluded that Plaintiff could perform light work with additional postural limitations.  (*See id.*).  And fourth, the opinion was unsupported by Dr. Benchoam-Ravid's own examination, which showed that Plaintiff "had full strength, normal sensation and reflexes" in her cervical and lumbosacral spine.  (*See id.*).  Thus, as is clear, the ALJ addressed Dr. Benchoam-Ravid's opinions' consistency and supportability, as required.

The ALJ found NP Conway's opinion unpersuasive for three reasons.  (*See id.* at 31).  First, the opinion "was inconsistent with [Plaintiff's] own report of activities[,] [which] includ[ed] mowing the lawn, attending to yardwork, helping her mother in the

shower, hunting for crayfish on a field trip, reading, watching TV, and attending to shopping, housework[,] and cooking for her family of five." (*Id.*). As explained above, this is a proper consideration. *See, e.g.*, *Lawrence K. v. Comm'r of Soc. Sec.*, No. 5:23-CV-00496 (DNH/CFH), 2024 WL 4133823, at *7 (N.D.N.Y. July 10, 2024) ("The undersigned notes that '[t]he ALJ was permitted to consider plaintiff's activities of daily living when evaluating the opinion evidence of record.'" (quoting *Jamie C. v. Kijakazi*, No. 3:21-CV-105 (ATB), 2022 WL 4356182, at *8 (N.D.N.Y. Sept. 20, 2022))), *report and recommendation adopted*, 2024 WL 3823486 (N.D.N.Y. Aug. 15, 2024). Second, the opinion was inconsistent with the "findings throughout the record showing [that Plaintiff was] ambulatory with a normal gait, including an observation [by] NP Conway [herself] that [Plaintiff] had a normal gait, a normal lung examination[,] and . . . a normal mood and affect." (*See* Dkt. 6 at 31 (citation modified)). And third, the opinion "made no reference at all to any spine impairments[] but instead cited [only to Plaintiff's] COPD and migraines." (*Id.*).

Based on those explanations, the ALJ's decision to discount Dr. Benchoam-Ravid's and NP Conway's opinions was supported by substantial evidence, and Plaintiff's arguments to the contrary are unavailing. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("Whether there is substantial evidence supporting the [claimant's] view is not the question [on appeal]; rather, [reviewing courts] must decide whether substantial evidence supports the ALJ's decision." (citation modified)); *see also Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (explaining that "an ALJ is not required to discuss every piece of evidence submitted," as well as that "an ALJ's failure

to cite to specific evidence does not indicate that such evidence was not considered." (citation modified)).

In sum, the ALJ followed the regulations when evaluating the medical opinions in the record. *See* 20 C.F.R. § 416.920c(a). To the extent Plaintiff argues otherwise, her arguments amount to a disagreement with the ALJ's weighing of the evidence, and it is "not the function of this Court to re-weigh evidence or to consider *de novo* whether [Plaintiff] is disabled." *Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021); *see Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review."). For those reasons, Plaintiff is not entitled to remand based on the ALJ's evaluation of the medical opinions in the record.

## B.    Assessment of Mental Impairments

Plaintiff argues that the ALJ erred by not finding Plaintiff's mental impairments to be severe or including any corresponding mental limitations in the RFC. (*See* Dkt. 12-1 at 13-14, 20-21). As noted, at step two, the ALJ concluded that Plaintiff's major depressive disorder and anxiety disorder were non-severe and correspondingly found that Plaintiff was only mildly impaired in the four areas of mental work-related functioning. (*See* Dkt. 6 at 24-25).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). "When formulating a claimant's RFC, the

ALJ must consider not only her severe impairments, but her non-severe impairments as well." *Novas v. Kijakazi*, No. 22-CV-1020 (MKV) (BCM), 2023 WL 2614362, at *11 (S.D.N.Y. Mar. 8, 2023) (citation modified), *report and recommendation adopted*, 2023 WL 2613550 (S.D.N.Y. Mar. 23, 2023). "This does not mean, however, that the ALJ must include a specific limitation in the RFC corresponding to each of the claimant's non-severe impairments. To the contrary: by definition, an impairment which is not severe does not significantly limit the claimant's physical or mental ability to do basic work activities." *DuBois v. Comm'r of Soc. Sec.*, No. 20-CV-8422 (BCM), 2022 WL 845751, at *5 (S.D.N.Y. Mar. 21, 2022) (citation modified).

As particularly relevant here, "there are no regulations that mild limitations require mental limitations in the RFC." *Jane M. A. v. Comm'r of Soc. Sec.*, No. 19-cv-00808, 2021 WL 63066, at *5 (W.D.N.Y. Jan. 7, 2021). In other words, "while it is true that nonsevere impairments and 'mild' limitations *can* cause functional restrictions," an ALJ is not compelled to conclude that they do if such a finding is not supported by the record. *See Lynette W. v. Comm'r of Soc. Sec.*, No. 19-CV-1168-FPG, 2021 WL 868625, at *4 (W.D.N.Y. Mar. 9, 2021) (emphasis in original); *see also Katherine R. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01055-MJR, 2021 WL 5596416, at *7 (W.D.N.Y. Nov. 30, 2021) ("Where . . . an ALJ's findings of only mild limitations in mental functioning are supported by substantial evidence in the record, the ALJ is not required to include mental limitations or restrictions in the RFC."). To the extent that Plaintiff's argument can be read to suggest that the ALJ was required to include any limitations in the RFC related to her mental limitations, "the law only requires the ALJ to *evaluate* non-severe impairments in the RFC

- 15 -

analysis, not to include limitations in the RFC[;] [t]o hold otherwise would defy logic: *requiring* an ALJ to limit a claimant's ability to work due to a non-severe impairment suggests that the non-severe impairment causes significant work limitations, which runs counter to the non-severity finding." *Catherine Jean D. v. Comm'r of Soc. Sec.*, No. 20-CV-1581-FPG, 2022 WL 4115367, at *3 (W.D.N.Y. Sept. 9, 2022) (emphasis in original) (citation modified); *see Christian H. v. Comm'r of Soc. Sec.*, No. 20-CV-1490MWP, 2022 WL 3648022, at *4 (W.D.N.Y. Aug. 24, 2022) ("Although an ALJ must account for limitations caused by both severe and nonsevere impairments in formulating the RFC, if a mental impairment causes only mild limitations that do not result in any functional work-related restrictions, the ALJ does not err by formulating an RFC without mental limitations or restrictions." (citation modified) (citing *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012))); *Maura B. C. v. Comm'r of Soc. Sec.*, No. 5:21-CV-0294 (DEP), 2022 WL 2789102, at *6 (N.D.N.Y. July 15, 2022) ("'While the analysis at steps two and three concerns the *functional* effects of mental impairments, the RFC analysis at step four specifically considers *work-related* physical and mental activities in a *work setting*,' such that 'a finding at steps two or three does not automatically translate to an identical finding at step four.'" (emphasis in original) (quoting *Wells v. Colvin*, 87 F. Supp. 3d 421, 436 (W.D.N.Y. 2015))).

Here, the ALJ concluded that Plaintiff's mental impairments do not cause more than minimal limitations in her ability to perform basic work activities. In light of that conclusion, the ALJ's finding that Plaintiff was no more than mildly impaired in the four areas of mental work-related functioning was supported by substantial evidence and it was

not error for the ALJ to determine that inclusion of greater limitations in the RFC was not warranted.  *See Rucker v. Kijakazi*, 48 F.4th 86, 91 (2d Cir. 2022) (acknowledging that "the substantial evidence standard is not high." (citation modified)).

> ## C.    RFC Determination

Finally, Plaintiff argues that the ALJ mischaracterized evidence and/or cherry-picked benign findings in determining her RFC.  (*See* Dkt. 12-1 at 13, 16-18).

It is well-settled that "an ALJ is not permitted to 'cherry pick' evidence that supports his RFC finding."  *Michelle J. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00306 CJS, 2023 WL 2623587, at *4 (W.D.N.Y. Mar. 24, 2023) (defining cherry-picking as "inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source." (citation modified)).  "Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary."  *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022); *see Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) ("When viewed alongside the evidence of the apparently cyclical nature of Estrella's depression, the ALJ's two cherry-picked treatment notes do not provide 'good reasons' for minimizing Dr. Dron's opinion.").  However, "an allegation of cherry-picking is seldom successful because crediting it would require a court to re-weigh record evidence," and "what a claimant may label as cherry-picking can often be described more neutrally as weighing the evidence."  *Lisa T. v. Kijakazi*, No. 3:20-CV-1764 (SVN), 2022 WL 2207613, at *3 (D. Conn. June 21, 2022) (citation modified).  That is the case here.

Specifically, as explained above, the ALJ appropriately weighed the medical opinion evidence and thoroughly explained his rationale for the persuasive value assigned to each opinion. (*See* Dkt. 6 at 30-32). To support her cherry-picking argument, Plaintiff contends that the ALJ improperly relied on Plaintiff's benign mental status examinations and failed to acknowledge the abnormal findings or the fact that most of the mental status examinations after March of 2020 were performed by telehealth. (*See* Dkt. 12-1 at 16).

But the ALJ's discussion of Plaintiff's mental status examinations highlighted the inconsistencies between the multiple medical opinions, treatment records, and any conflicts with Plaintiff's reported activities of daily living. (*See* Dkt. 6 at 24-25). The ALJ acknowledged Plaintiff's reports of memory problems, not wanting to be around others, and trouble concentrating, and he then properly weighed those reports in determining the persuasive value of the medical opinion evidence and Plaintiff's own reports of her activities of daily living in crafting the RFC. (*See id.*). Specifically, he highlighted the fact that Plaintiff does all of the cooking for her family, manages doctor appointments and medication for her children, her mother, and her fiancé, as well as managing money and shopping. (*See id.* at 25). That fact that some of Plaintiff's appointments were by telehealth was not a factor requiring explicit discussion by the ALJ or serve as a basis to conclude that the ALJ's decision was flawed. *See, e.g.*, *Lakesha R. v. Comm'r of Soc. Sec.*, No. 5:23-CV-00918 (AMN/ML), 2024 WL 3517733, at *2 (N.D.N.Y. July 24, 2024) ("Whether or not PA Morabito's evaluations of Plaintiff were performed in-person or through telehealth does not impact or remedy the deficiencies noted by the ALJ . . . ."). Thus, "while Plaintiff points to other evidence in the record suggesting greater limitations than recognized by the

ALJ, the question here is whether the ALJ's determination was properly supported by the record, not whether a contrary finding might also have been supported." *See Barrington C. v. Comm'r of Soc. Sec.*, No. 5:24-CV-00528 (AMN/TWD), 2025 WL 1884886, at *9 (N.D.N.Y. May 12, 2025) (citation modified), *report and recommendation adopted*, 2025 WL 1682610 (N.D.N.Y. June 16, 2025).

In short, it is the responsibility of the ALJ and not this Court "to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). As the Court explained, the ALJ provided ample reasoning to support his determinations in arriving at the RFC. The Court has no difficulty gleaning the basis for the ALJ's RFC finding from his decision and it therefore rejects Plaintiff's argument that the ALJ cherry-picked and mischaracterized the evidence. Remand is accordingly not warranted.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings (Dkt. 18) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 12) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:    January 15, 2026
          Rochester, New York

- 19 -